## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

JOHN MAY,               )
                      )
          **Plaintiff,**    )     **Case No. 1:24-cv-277**
                      )
       **v.**             )
                      )
ERIE COUNTY, *et al.*,    )
                      )
          **Defendants.**   )

## MEMORANDUM OPINION

**Susan Paradise-Baxter, United States District Judge**

### I.    Introduction

On October 11, 2024, Plaintiff John May filed a motion to proceed *in forma pauperis*, ECF No. [1], and lodged a *pro se* civil rights complaint against Erie County and fourteen (14) additional Defendants. ECF No. [1-3].  Thereafter, Plaintiff filed a "Motion to Amend *in Forma Pauperis* Application and Complaint, ECF No. [2]; a "Motion to Stay, Remove and Remand to United States District Court for the Western District of Pennsylvania," ECF No. [3]; and a "Motion for Joinder of Claims with New Evidence," ECF No. [4].

On May 15, 2025, Plaintiff filed four additional motions, namely: an "Immediate and Emergency Motion to Proceed Without Prepayment of Fees or Costs," ECF No. [5] and ECF No. [6]; an "Immediate Emergency Motion for Status Conference to Compel Disclosure of Insurance, Bonds, and Investor Information, Resolve Service Issues, Address Conflicts of Interest, and Judicial Entanglement" ECF No. [7]; an "Immediate Emergency Request for Expedited Hearing on [the] Emergency Motion," ECF No. [8]; and an "Emergency and Immediate Motion for Service Correction and Amendment of Original Process with Emergency

Motion for Protective Order, Sanctions, and to Compel Disclosure of Deposition Transcripts and Exhibits," ECF No. [9].p]

For the reasons that follow, Plaintiff will be permitted to amend his motion for leave to proceed *in forma pauperis* and that motion, as amended, will be granted. Plaintiff's complaint will be dismissed without prejudice for failure to state a claim upon which relief can be granted and for lack of standing as to certain claims. Because it is not clear whether the defects in the complaint can be remedied, the Court will grant Plaintiff leave to file an amended pleading, to the extent he can do so consistent with the standards discussed in this Memorandum Opinion. Plaintiff's remaining motion will be dismissed without prejudice.

## II.    Background Facts

Plaintiff is a resident of Erie County who "identifies as a physically and mentally disabled, nondisclosed pansexual individual[.]" ECF No. 1-2 at 4, ¶6. He is currently experiencing homelessness, "a situation he attributes in part to the actions of [fifteen] Defendants," *id.,* specifically: Erie County (the "County"), Erie County Department of Health ("ECDOH"), Erie County Sheriff's Department ("ECSD"), Erie County Office of Children and Youth ("ECOCY"), Erie County Crisis Management Services ("ECCMS"), former County Executive Kathy Dahlkemper ("Dahlkemper"), Erie County Care Management ("ECCM"), the law firm MacDonald Illig Jones & Britton, LLP ("MIJB"), Attorney Janine M. McClintic ("McClintic"), Attorney Lisa Smith Presta ("Presta"), Attorney Lauren Holler ("Holler"), former solicitor and now Judge Peter Sala ("Judge Sala"), ECCM Coach Sean O'Neill ("O'Neill"),[1] Erie County Land Bank ("ECLB"), and Erie Downtown Development Corporation ("EDDC"). *Id.* at

---

[1] In the Complaint, Plaintiff misidentifies the Defendant's surname as "O'Neil." The Court takes judicial notice of the proper spelling of Defendant O'Neill's surname and his position at ECCM based on publicly available information on ECCM's website. *See* https://www.eccm.org/supervisors.

4-5, ¶¶7-21.  Plaintiff also purports to sue "various [unidentified] Erie County officials and contracted providers" who are "alleged to have personal and professional conflicts affecting their duties."  *Id.* at 5, ¶22.

According to the Complaint, "[t]his is a civil rights action brought pursuant to 42 U.S.C. §1983 and other federal and state laws."  ECF No. 1-2 at 3, ¶1.  Plaintiff contends that the "Defendants engaged in a widespread pattern of unlawful conduct during and after the COVID-19 pandemic, including misuse of public funds, discrimination, violations of constitutional rights, retaliation against whistleblowers, and the exploitation of the administrative state to create and profit from a manufactured housing crisis. *Id.*  Plaintiff "brings this action in his capacity as a concerned citizen, taxpayer, and as an individual who has been directly harmed by Defendants' actions." *Id.* at ¶2.  Plaintiff "also acts as Power of Attorney for Tiffany Oliver and has primary care responsibilities for their 9-year -old son." *Id.*  He states that some of the alleged harms arose while he was performing duties for Ms. Oliver "related to the case entitled Tiffany Oliver v. Erie County Health Department et al.[,]" *id.,* docketed in this judicial district at Case No. 1:21-cv-162.

Although his Complaint is laden with conclusory averments of wrongdoing, Plaintiff appears to be claiming that the Defendants were involved in various forms of misconduct, including the misappropriation of COVID-19 funds, misusing or abusing governmental regulatory powers during the COVID-19 pandemic, exploiting administrative powers "to Create and Profit" from a "Housing Crisis," ECF No. 1-2 at 7, intimidating and retaliating against Plaintiff, mistreating Plaintiff's autistic son, and denying Tiffany Oliver a fair hearing in connection with a separate judicial proceeding.  The Complaint identifies thirteen causes of action, listed in summary fashion as follows:

COUNT I: Violation of 42 U.S.C. § 1983 - Fourteenth Amendment Equal Protection and Due Process

COUNT II: Violation of 42 U.S.C. § 1983 - First Amendment Free Speech and Right to Petition

COUNT III: Violation of the Americans with Disabilities Act

COUNT IV: Violation of the Fair Housing Act

COUNT V: Breach of Fiduciary Duty

COUNT VI: Fraud and Misrepresentation

COUNT VII: Retaliation

COUNT VIII: Intentional Infliction of Emotional Distress

COUNT IX: Negligence

COUNT X: Violation of the Fair Housing Act - Disparate Impact

COUNT XI: Violation of 42 U.S.C. § 1983 - Fifth Amendment Takings Clause

COUNT XII: Violation of Pennsylvania Ethics Act

COUNT XIII: Unjust Enrichment

ECF No. 1-2 at 8-9. For these alleged violations, Plaintiff seeks damages and equitable relief.

## III.    Review of Plaintiff's Application for Leave to Proceed in Forma Pauperis

The United States Court of Appeals for the Third Circuit has instructed the district courts to utilize a two-step analysis when determining whether to direct service of a complaint in cases where the plaintiff seeks to proceed *in forma pauperis. See Roman v. Jeffes*, 904 F.2d 192, 194 n. 1 (3d Cir. 1990). First, the district court evaluates a litigant's financial status and determines whether he or she is eligible to proceed *in forma pauperis* under § 1915(a); second, the court assesses the complaint under § 1915(e)(2)[2] to determine whether it is frivolous or otherwise

---

[2] This provision was formerly codified as 28 U.S.C. § 1915(d).

subject to *sua sponte* dismissal. *Id.* (citing *Sinwell v. Shapp*, 536 F.2d 15 (3d Cir. 1976)); *see Brown v. Sage*, 903 F.3d 300, 304 (3d Cir. 2018) (describing two-step process for evaluating a petitioner's motion to proceed *in forma pauperis* on appeal); *Schneller v. Abel Home Care, Inc.*, 389 F. App'x 90, 92 (3d Cir. 2010); *Rogers v. United States*, 248 F. App'x 402, 402-03 (3d Cir. Sept. 21, 2007).

Here, Plaintiff's motion at ECF No. [5], although styled as an "emergency motion," is in the nature of an amended application to proceed *in forma pauperis*. So construed, the motion at ECF No. [5] will be granted, as it appears from the information provided that Plaintiff lacks sufficient funds to pay the required filing and administrative fees in this action.[3] Accordingly, the Clerk will be directed to file Plaintiff's complaint as a separate docket entry. Plaintiff's initial motion for leave to proceed *in forma pauperis*, ECF No. [1] and his prior Motion for Leave to Amend In Forma Pauperis Application, ECF No. [2], will be dismissed as moot. Further, Plaintiff's motion at ECF No. [6], which is duplicative of ECF No. [5], will also be dismissed as moot.

## IV.    Review of Plaintiff's Pleading Under 28 U.S.C. §1915(e)

### A.    Legal Standards Governing §1915(e) Review

At the outset, the Court must determine whether it has jurisdiction over the matter at issue. *See Peace Church Risk Retention Grp. v. Johnson Controls Fire Prot. LP*, 49 F.4th 866, 869-70 (3d Cir. 2022) ("[Courts] have a continuing obligation to assess subject[-]matter jurisdiction *sua sponte* at all stages of the proceeding, even when parties do not raise the issue.");

---

[3] To the extent Plaintiff's motion at ECF No. [5] includes a request for an immediate decision on his application, that request is also granted by virtue of this ruling.

Fed. R. Civ. P. 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action.").

"'Article III of the Constitution limits the judicial power of the United States to the resolution of Cases and Controversies, and Article III standing enforces the Constitution's case-or-controversy requirement.'" *Nichols v. City of Rehoboth Beach*, 836 F.3d 275, 279 (3d Cir. 2016) (quoting *Hein v. Freedom From Religion Found., Inc.*, 551 U.S. 587, 597-98 (2007)). To have standing under Article III of the U.S. Constitution, a plaintiff must show that (1) he has suffered some actual or threatened injury, (2) the injury is fairly traceable to the challenged conduct, and (3) the injury could be redressed by a favorable decision. *Samuels v. Bryn Mawr Coll.*, No. 24-1566, 2024 WL 4299031, at *1 (3d Cir. Sept. 26, 2024); *Stehney v. Perry*, 101 F.3d 925, 930 (3d Cir. 1996). The first requirement involves an "invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992).

The party invoking federal jurisdiction bears the burden of establishing the elements of standing. *Samuels*, 2024 WL 4299031, at *1 (citing *Lujan,* 504 U.S. at 561). At the pleading stage, "the plaintiff must clearly ... allege facts demonstrating each element." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016).

If the Complaint presents an actual "case" or "controversy," the Court must next determine whether the Complaint is otherwise subject to dismissal under the provisions of 28 U.S.C. §1915(e)(2)(B), as amended.[4] Pursuant to this statute, "[t]he court shall dismiss the case

---

[4] Because Plaintiff is proceeding *in forma pauperis*, this Court must review his pleading in accordance with the amendments promulgated in the Prison Litigation Reform Act ("PLRA"), Pub. L. No. 104-134, 110 Stat. 1321 (1996). While Plaintiff is not incarcerated, the amendments to the PLRA, codified as 28 U.S.C. §1915, apply to non-prisoners who have been granted *in forma pauperis* status. *See Powell v. Hoover*, 956 F. Supp. 564, 566 (M.D. Pa. 1997) (holding that federal *in forma pauperis* statute is not limited to prisoner suits).

at any time if the court determines that ... the action ... (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." A claim is "frivolous" if it "depends on an indisputably meritless legal theory or a clearly baseless or fantastic or delusional factual scenario." *Dooley v. Wetzel*, 957 F.3d. 366, 374 (3d Cir. 2020) (internal quotation marks and citations omitted).

In determining whether a complaint states a viable claim for relief, we apply the same legal standard that is used to evaluate pleadings challenged under Federal Rule of Civil Procedure 12(b)(6). *See Tourscher v. McCullough*, 184 F.3d 236, 240 (3d Cir. 1999). To survive a Rule 12(b)(6) motion to dismiss, a complaint "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* In applying this standard, courts must accept all well-pleaded factual allegations as true; however, "legal conclusions couched as factual allegations, conclusory factual allegations, and threadbare recitals of a cause of action are insufficient to state a facially plausible claim." *Id.* at 678-79. Thus, a complaint that merely "tenders 'naked assertion[s]' devoid of 'further factual enhancement'" is legally deficient. *Id.* at 678 (alteration in original) (internal quotation marks and citations omitted).

Because Plaintiff is proceeding *pro se,* his pleading must be liberally construed and "held 'to less stringent standards than formal pleadings drafted by lawyers.'" *Fantone v. Latini*, 780 F.3d 184, 193 (3d Cir. 2015) (quoting *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972)); *see also Erickson v. Pardus*, 551 U.S. 89, 94 (2007). Accordingly, this Court must "apply the applicable law, irrespective of whether [Plaintiff] has mentioned it by name." *Higgins v. Beyer*, 293 F.3d

683, 688 (3d Cir. 2002) (internal quotation marks and citation omitted). Nevertheless, "*pro se* litigants still must allege sufficient facts in their complaints to support a claim ... they cannot flout procedural rules - they must abide by the same rules that apply to all other litigants." *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 245 (3d Cir. 2013) (citations omitted). If the court perceives a pleading deficiency, it must grant the plaintiff leave to amend his complaint, unless further amendment would be inequitable or futile. *See Grayson v. Mayview State Hosp.*, 293 F.3d 103, 114 (3d Cir. 2002).

### B. Analysis

#### 1. *Plaintiff's Failure to Establish Standing*

According to the Complaint, Plaintiff brings this action in his capacity as a concerned citizen, taxpayer, and as an individual who has been directly harmed by Defendants' actions. ECF No. 1-2 at 3, ¶2. Plaintiff "also acts as Power of Attorney for Tiffany Oliver and has primary care responsibilities for their 9-year-old son." *Id.* Plaintiff states that "[s]ome" of the harms alleged in the Complaint "arose while performing duties for Ms. Tiffany Oliver" in her lawsuit against the Erie County Health Department and others. *Id.*; *see Oliver v. Erie County Health Dep't, et al.*, No. 1:21-cv-162 (W.D Pa.).

While a *pro se* litigant may represent himself in a federal court action, he may not represent other individuals. *Yoder v. Dist. Att'y Montgomery Cnty.*, 790 F. App'x 478, 481 (3d Cir. 2019) ("[A]n individual proceeding pro se may not represent third parties in federal court...."). This prohibition also applies to lay litigants who have power of attorney for another individual. *See Williams v. United States*, 477 F. App'x 9, 11 (3d Cir. 2012) (holding that power of attorney "may confer certain decision-making authority under state law, but it does not permit [one] to represent [another] *pro se* in federal court"); *Greene v. Experian Info. Sols.*, No. CV 23-

8

1333 (RBK/MJS), 2024 WL 1070300, at *3 (D.N.J. Mar. 12, 2024) (the prohibition against non-attorneys representing other parties in federal court applies in the "power of attorney" context) (citing authority).  Thus, to the extent Plaintiff is attempting to assert claims on behalf of Ms. Oliver or his son in this case, those claims must be dismissed.

As an example, Plaintiff appears to be alleging a "failure to accommodate" claim under the Americans with Disabilities Act partly on behalf of Tiffany Oliver. *See* ECF No. 1-25 at 6, ¶31.  Elsewhere in his Complaint, Plaintiff alleges that Defendants Smith, Holler, and other Defendants associated with MIJB operated under conflicts of interest that affected the fairness of Tiffany Oliver's lawsuit against the Erie County Health Department and other organizations. Because Plaintiff cannot represent Ms. Oliver on a *pro se* basis in this case, his present claims predicated on alleged injuries to Ms. Oliver must be dismissed.  Ms. Oliver may, however, proceed on her own behalf in a *pro se* capacity.  Alternatively, if Plaintiff has legitimate power of attorney to act as Ms. Oliver's agent regarding the instant claims, he may file suit in her name, through an attorney.  *See Rabner v. Titelman*, No. 15-1313, 2016 WL 1613444, at *5 (W.D. Pa. Apr. 22, 2016) ("The United States Court of Appeals for the Third Circuit has held that an individual holding a power of attorney as agent or attorney-in-fact is not the real party in interest for Rule 17 purposes but that a suit may be brought by the attorney-in-fact on behalf of the principal.") (citing authority); *Freeman v. Plummer*, No. ST-12-CV-59, 2012 WL 12518130, at *4 (V.I. Super. Mar. 2, 2012)("While a pro se principal cannot delegate the actual act of legal representation to anyone except a public attorney, a duly executed power of attorney can allow the agent to retain legal counsel on behalf of the principal.").

Similarly, Plaintiff cannot litigate claims that are asserted on behalf of his autistic son. For example, Plaintiff alleges that unidentified employees of the Millcreek Township School

District engaged in abusive practices toward his child, "including forcing the child to write confessions for involuntary urination related to his disability." ECF No. 1-2 at 7, ¶41. Setting aside the fact that neither the school district nor any of its employees have been named as Defendants in this lawsuit,[5] Plaintiff cannot, as a *pro se* litigant, represent his minor child. *See Osei–Afriyie v. Medical College of Pa.,* 937 F.2d 876, 883 (3d Cir.1991) (holding that "[the plaintiff] was not entitled, as a non-lawyer, to represent his children in place of an attorney in federal court"); *Greenberg v. McEwen,* No. 2:24-CV-517, 2025 WL 1207778, at *5 n.7 (W.D. Pa. Apr. 25, 2025) (court noting that the plaintiff was "appearing *pro se* and therefore is not permitted to represent other parties, including his minor child"). Again, Plaintiff may assert claims on behalf of his minor child as a "next friend," but he must do so through legal counsel. *See Bush v. Goodall,* 732 F. App'x 135, 137 (3d Cir. 2018) ("The rule prohibiting a next friend from litigating pro se on behalf of another person exists to protect the rights of the represented party."); *Moolenaar v. Arlington Cnty. Virginia Child Protective Servs.,* No. 3:21-CV-0033, 2022 WL 4535660, at *3 (D.V.I. Sept. 28, 2022) ("Moolenaar cannot proceed as next friend in this action without the assistance of counsel.").

Beyond these deficiencies, certain aspects of the Complaint are too vague to support an inference of Plaintiff's standing. The Complaint states, for example, that

> 23. During the COVID-19 pandemic, Defendants, particularly former County Executive Kathy Dahlkemper and the Erie County Department of Health, implemented policies and allocated funds in ways that benefitted personal associates and themselves rather than addressing the public health crisis adequately.

> 24. Defendants misappropriated COVID-19 relief funds intended for public health and economic support, diverting them to benefit personal associates of local politicians and the Defendants.

---

[5] The only named Defendant who is alleged to have a connection to the Millcreek School District is Defendant McClintic, an attorney with MIJB who allegedly serves on the Millcreek Township School District Board. ECF No. 1-2 at 4, ¶15. Plaintiff makes no specific allegations concerning Attorney McClintic as it relates to Plaintiff's son.

25. The Erie County Land Bank, strongly affiliated with MacDonald Illig, is alleged to have engaged in practices that involve shutting down local businesses under the use of public health or regulatory mandates, then transferring those properties to be sold at or above market rates to preferred clients who are reportedly family, friends of the firm, and elected officials.

26. Defendants created an environment where personal interests interfered with the objective allocation of public funds, violating ethical standards and public trust.

\*\*\*

27. Defendants' enforcement of COVID-19 health regulations was arbitrary and discriminatory, violating the Equal Protection Clause of the Fourteen Amendment.

28. Defendants deprived citizens of life, liberty, or property without due process of law in violation of the Due Process Clause of the Fourteenth Amendment.

29. Defendants restricted communication and dissemination of information regarding public health measures, infringing upon First Amendment rights to free speech and to petition the government for redress of grievances.

30. Defendants' actions violated privacy rights protected by the Fourth Amendment.

ECF 1-2 at 5, ¶¶23-30.

Nowhere in the Complaint does Plaintiff allege how his own legally protected interests were actually impacted in a "concrete and particularized manner" by the alleged wrongdoing. See *Lujan,* 504 U.S. at 560. Thus, as to this aspect of his complaint, Plaintiff has not "clearly ... allege[d] facts demonstrating each element" of standing. *Spokeo, Inc.*, 578 U.S. at 338.

Nor has Plaintiff alleged facts that would establish "taxpayer" standing. The Supreme Court has recognized that a municipal taxpayer may have standing to litigate "a good-faith pocketbook action." *ACLU-NJ v. Twp. of Wall*, 246 F.3d 258, 262 (3d Cir. 2001) (citing *Doremus v. Bd. of Educ. of Hawthorne*, 342 U.S. 429, 434 (1952)). But to challenge a municipal expenditure, "a municipal taxpayer plaintiff must show (1) that he pays taxes to the municipal entity, and (2) that more than a de minimis amount of tax revenue has been expended on the challenged practice itself." *Id.* Nowhere in the Complaint does Plaintiff allege facts sufficient to satisfy this standard.

Accordingly, Plaintiff has not shown that he has standing to prosecute the foregoing aspects of his Complaint.  Those claims must therefore be dismissed for lack of jurisdiction.

### 2. *Plaintiff's Failure to State a Claim Upon Which Relief Can Be Granted*

Assuming that Plaintiff has standing to assert at least some of his claims, the Court next considers whether he has alleged facts that would support a plausible cause of action.

#### a. CLAIMS ASSERTED UNDER 42 U.S.C. §1983

Plaintiff is asserting certain claims under 42 U.S.C. §1983.[6]  To state an actionable claim under this statute, Plaintiff must plausibly allege that a "person," while acting under color of state law, violated a right guaranteed to him by the Constitution or federal law.  *See West v. Atkins*, 487 U.S. 42, 48 (1988).

#### *"Persons"*

Unlike municipalities, which are "persons" that can be sued under Section 1983, *Monell v. Dep't of Social Services of the City of New York*, 436 U.S. 658, 690 (1978), municipal departments have no legal status separate from the municipality itself.  Therefore, a county department or agency is not an appropriate defendant in a Section 1983 lawsuit. *See Woodyard v. Cnty. of Essex*, 514 F. App'x 177, 181 (3d Cir. 2013); *Hernandez v. Borough of Palisades Park Police Dep't*, 58 F. App'x 909, 912 (3d Cir. 2003) (for purposes of § 1983 liability, a municipality and a municipal agency are a single entity); *Carter v. Child & Youth Servs.*, No. 23-CV-0798, 2024 WL 69341, at *4 (E.D. Pa. Jan. 5, 2024) ("Because CYS is an administrative

---

[6] Section 1983 provides a private right of action as against "[e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State ..., subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws" of the United States.

arm of Delaware County, all claims against CYS as any sort of distinct or independent entity are dismissed with prejudice, and the Court will dismiss CYS as a defendant in this action."); *Medina v. Cumberland Cnty.*, No. 11-905, 2011 WL 1750738, at *2 (D.N.J. May 3, 2011) (holding that "sheriff's departments and corrections departments are not separate legal entities from the County, and therefore cannot be independently sued for violations of §1983").

Here, Plaintiff has sued Erie County as well as several county departments, including ECDOH, ECSD, and ECOCY. These agencies do not have a legal existence separate from the County itself. Plaintiff has also sued Erie County Crisis Management Services ("ECCMS"), an entity which does not appear to have a separate legal existence, but which the Complaint indicates can "Likely [be] served through Erie County Department of Human Services." ECF No. 1-2 at 2, ¶5. Because these entities are not properly named Defendants, they will be dismissed from this lawsuit.

*"Color of State Law"*

To the extent Plaintiff has properly identified "persons" who may be sued under Section 1983, he must demonstrate that those persons acted "under color of state law." *West,* 487 U.S. at 48. Here, the "color of state law" requirement is satisfied as to Erie County and former County Executive Kathy Dahlkemper. The Court will further assume for present purposes that the ECLB, ECCM, and Defendant O'Neill are "persons" who acted "under color of state law."

Yet Plaintiff has also sued a number of private actors, including MIJB and three of its attorneys (McClintic, Presta, and Holler). As to these Defendants -- as well as EDDC and former solicitor (now Judge) Peter Sala -- their status as state actors is unclear and cannot be readily inferred.

Whether a defendant acted "under color of state law" depends on "whether there is such a close nexus between the State and the challenged action that seemingly private behavior may be fairly treated as that of the State itself." *Leshko v. Servis*, 423 F.3d 337, 339 (3d Cir. 2005). To make this determination, courts utilize "three broad tests" – *i.e.,* "(1) whether the private entity has exercised powers that are traditionally the exclusive prerogative of the state; (2) whether the private party has acted with the help of or in concert with state officials; and (3) whether the state has so far insinuated itself into a position of interdependence with the acting party that it must be recognized as a joint participant in the challenged activity." *Kach v. Hose*, 589 F.3d 626, 646 (3d Cir. 2009) (internal quotation marks and alteration omitted). "Of course, merely resorting to the courts and being on the winning side of a lawsuit does not make a party a co-conspirator or a joint actor with the judge." *Dennis v. Sparks,* 449 U.S. 24, 28 (1980). Nor does Defendant Sala's status as a former county solicitor necessarily establish that he was a state actor. *See Henry v. York Cnty.*, No. 3:21-CV-247, 2022 WL 854091, at *3 (M.D. Pa. Mar. 22, 2022) (individuals who acted as solicitors and attorneys for the county were "not automatically" state actors under §1983; court noting that, "[t]o the extent that an attorney renders advice, drafts correspondence on behalf of a client, or otherwise engages in legal activities, he or she will generally not be subject to liability as a state actor") (citing *Angelico v. Lehigh Valley Hosp.,* 184 F.3d 268, 276-78 (3d Cir. 1999)).

Thus, apart from other problems discussed herein, the Complaint fails to allege facts indicating that Defendants MIJB, McClintic, Presta, Holler, Sala, or EDDC acted under color of state law for purposes of establishing Section 1983 liability. In light of this deficiency, the Section 1983 claims against these Defendants must be dismissed.

*"Personal Involvement"*

Although Plaintiff has not specified whether he is suing the Defendants in their personal or official capacities, the Court assumes for present purposes that Plaintiff is seeking to establish each Defendant's personal liability. To establish a defendant's personal liability under Section 1983, the plaintiff must allege facts that show the defendant's personal involvement in the alleged misconduct. *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988). Personal involvement requires particular "allegations of personal direction or of actual knowledge and acquiescence." *Id.*

Throughout his Complaint, Plaintiff makes numerous allegations referring to the "Defendants" in the collective, without differentiating them or attributing specific conduct to particular persons. Plaintiff generically alleges, for example, that "Defendants' enforcement of COVID-19 health regulations was arbitrary and discriminatory," that "Defendants deprived citizens of life, liberty or property without due process of law," that "Defendants restricted communication and dissemination of information regarding public health measures," and that "Defendants' actions violated privacy rights." ECF No. 1-2 at 5, ¶¶27-30. Elsewhere, he alleges that "Defendants engaged in a systematic campaign of intimidation," that "Defendants used law enforcement, particularly the [ECSD], to intimidate Plaintiff and extract protected health information," and "Defendants pressured claimants to settle or withdraw complaints for sums below $80,000 . . . ." *Id.* at 6, ¶¶33-35. And still elsewhere, Plaintiff alleges in conclusory fashion that "Defendants associated with the Millcreek Township School District violated parental rights and religious beliefs regarding medical care and treatments for Plaintiff's autistic child." *Id.* at 7, ¶40. No further factual information is alleged to shed light on which specific actors were involved or what they did in violation of Plaintiff's parental rights. To the extent

these types of generic and conclusory allegations serve as the predicate for Plaintiff's Section 1983 claims, they are inadequate to establish any Defendant's personal liability. *See Verticelli v. Commonwealth of Pa. Dep't of Corrs.*, No. 25-CV-1463, 2025 WL 1426082, at *2 (E.D. Pa. May 15, 2025) (noting that a Section 1983 plaintiff "must allege how each defendant was involved in the events and occurrences giving rise to the claims").

The Complaint also fails to attribute any specific conduct to O'Neill, Sala, or McClintic, despite naming them as Defendants. Accordingly, any Section 1983 claims directed toward those individuals must be dismissed based on Plaintiff's failure to allege their personal involvement in wrongdoing.

### Municipal Liability

Plaintiff has also named Erie County as a Defendant in this case. "Plaintiffs who seek to impose liability on local governments under §1983 must prove that action pursuant to official municipal policy caused their injury." *Connick v. Thompson*, 563 U.S. 51, 60–61 (2011) (cleaned up). Municipalities, under § 1983, are responsible for "decisions of a government's lawmakers, the acts of its policymaking officials, and practices so persistent and widespread as to practically have the force of law." *Id.* at 61; *see Monell v. New York City Department of Social Services*, 436 U.S. 658, 694 (1978) ("a local government" may only be sued under § 1983 "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible" for). To successfully state a §1983 claim for municipal liability, Plaintiff must allege (1) that he "possessed a constitutional right of which [he] was deprived"; (2) "the municipality had a policy or custom"; (3) "the policy or custom 'amounted to deliberate indifference' to the plaintiff's constitutional right"; and (4) "the policy was the 'moving force

16

behind the constitutional violation.'" *Williams v. Del. Cty. Bd. of Prison Inspectors*, No. 17-cv-4348, 2018 WL 3235788 at *4–6 (E.D. Pa. July 2, 2018) (quoting *Vargas v. City of Phila.*, 783 F.3d 962, 974 (3d Cir. 2015)).

Here, Plaintiff alleges certain misconduct on the part of Defendant Dahlkemper and the County as it relates to alleged misuse of public funding during the COVID-19 pandemic, in violation of ethical standards and public trust. However, Plaintiff does not allege how any municipal policy amounted to "deliberate indifference" or functioned as the "moving force" behind the deprivation of his own constitutional rights.

Elsewhere, Plaintiff alleges that the Defendants engaged in misconduct that violated the First, Fourth, Fifth, and Fourteenth Amendments. ECF No. 1-2 at 5, ¶¶27-30, id. at 7, ¶40. What Plaintiff does *not* do is identify any municipal policy or custom that caused the alleged deprivations.

### *Plausible Constitutional Violation*

Finally, to state a viable Section 1983 claim, Plaintiff must aver facts that could establish a plausible violation of his Constitutional or federal statutory rights. Here, Plaintiff alleges violations of his rights under the First, Fourth, Fifth, and Fourteenth Amendment but fails to provide factual content in support of the alleged violations.

(i)    No Fourth Amendment Claim is Stated

Plaintiff avers that "Defendants' actions violated privacy rights protected by the Fourth Amendment." ECF No. 1-2 at 5, ¶30. But the only allegation that arguably relates to this claim is Plaintiff's vague assertion that "Defendants" used the Sheriff's Department to "intimidate" him and "extract protected health information." *Id.* at 6, ¶34. Without more, the Complaint does not state a plausible Fourth Amendment violation.

     *(ii)*    <u>No Fourteenth Amendment Claim is Stated</u>

Plaintiff alleges that the "Defendants' enforcement of COVID-19 health regulations was arbitrary and discriminatory, violating the Equal Protection Clause of the Fourteenth Amendment." ECF No. 1-2 at 5, ¶27. To state an equal protection claim, Plaintiff must allege that "(1) the defendant treated him differently from others similarly situated, (2) the defendant did so intentionally, and (3) there was no rational basis for the difference in treatment." *Phillips v. County of Allegheny*, 515 F.3d 224, 243 (3d Cir. 2008) (citing *Hill v. Borough of Kutztown*, 455 F.3d 225, 239 (3d Cir. 2006)). Here, the complaint fails to provide any factual content to show that Plaintiff was intentionally treated differently from other similarly situated individuals.

Elsewhere, Plaintiff summarily claims that "Defendants deprived citizens of life, liberty, or property without due process of law in violation of the Due Process Clause of the Fourteenth Amendment." ECF No. 1-2 at 5, ¶28. "To state a claim under § 1983 for deprivation of procedural due process rights, a plaintiff must allege that (1) he was deprived of an individual interest that is encompassed within the Fourteenth Amendment's protection of 'life, liberty, or property,' and (2) the procedures available to him did not provide 'due process of law.'" *Hill v. Borough of Kutztown*, 455 F.3d 225, 233–34 (3d Cir. 2006). "To have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead have a legitimate claim of entitlement to it." *Board of Regents v. Roth*, 408 U.S. 564, 577 (1972). Here, Plaintiff has not alleged the deprivation of a specific, constitutionally protected, liberty or property interest, nor has he alleged that the procedures that were available to address such deprivation were constitutionally deficient.

"To establish a substantive due process claim, a plaintiff must prove the particular interest at issue is protected by the substantive due process clause and the government's deprivation of that protected interest shocks the conscience." *Chainey v. Street*, 523 F.3d 200, 219 (3d Cir. 2008). The liberty or property interest at stake must be "fundamental" for purposes of a substantive due process claim. *See Flex v. Allentown Police Pension Fund Assoc.*, No. 5:24-CV-06601-JMG, 2025 WL 1426967, at *5 (E.D. Pa. May 14, 2025). Plaintiff has not pled the deprivation of a fundamental liberty or property interest as the result of conduct by a particular Defendant that "shocks the conscience."

(iii)     <u>No First Amendment Claim is Stated</u>

The Complaint alleges, in conclusory fashion, that "Defendants restricted communication and dissemination of information regarding public health measures, infringing upon First Amendment rights to free speech and to petition the government for redress of grievances." ECF No. 1-2 at 5, ¶29. One portion of the Complaint addresses "Retaliation and Intimidation" and alleges the following:

- "Defendants engaged in a systematic campaign of intimidation aimed at Plaintiff" to deter him "from uncovering and revealing information detrimental to Defendants' interests." ECF No. 1-2 at 6, ¶33.
- "Defendants used law enforcement, particularly the Erie County Sheriff's Department, to intimidate Plaintiff and extract protected health information in violation of HIPAA [sic] and constitutional rights." *Id.* at ¶34.
- "Defendants pressured claimants to settle or withdraw complaints for sums below $80,000 to prevent scrutiny and accountability." *Id.* at ¶35.

To assert a First Amendment retaliation claim, Plaintiff must plead facts showing: (i) that he engaged in constitutionally protected conduct, (ii) that a Defendant engaged in retaliatory action sufficient to deter a person of reasonable firmness from exercising his constitutional rights, and (iii) that a causal link exists between the protected activities and the retaliatory action. *Thomas v. Independence Twp.*, 463 F.3d 285, 296 (3d Cir. 2006). Here, Plaintiff's vague

19

reference to a "complaint" and information that is "detrimental to Defendants' interests" is insufficient to establish that he personally engaged in constitutionally protected activity. In addition, Plaintiff's assertions that the "Defendants" pressured him to settle lawsuits and engaged in harassment and intimidation fail to specify how -- or by whom -- Plaintiff was "harassed," "intimidated," or "pressured." Additionally, the Court cannot plausibly infer, from the information provided, that there was a causal connection between the alleged retaliation and constitutionally protected conduct.

Similarly, Plaintiff has not alleged facts that would plausibly show how a particular Defendant acting under color of state law "restricted communication and dissemination of information regarding public health measures" in a manner that "infring[ed] upon [Plaintiff's] First Amendment rights to free speech" or his First Amendment right "to petition the government for redress of grievances." ECF No. 1-2 at 5, ¶29. At most, Plaintiff's non-conclusory averments suggest the *possibility* of unlawful retaliation against Plaintiff; however, "[a]llegations that are merely consistent with a defendant's liability or show the mere possibility of misconduct are not enough." *Santiago v. Warminster Twp.*, 629 F.3d 121, 133 (3d Cir. 2010) (cleaned up).

(iv)   No Takings Clause Claim is Stated

The Complaint also indicates that Plaintiff is asserting a violation of his rights under the Fifth Amendment's "Takings" Clause. "The Takings Clause prohibits the taking of private property 'for public use, without just compensation,' U.S. Const. amend. V, and applies to state and local governments through the Fourteenth Amendment." *Speedwell, LLC v. Town of Morristown,* No. 21CV18796, 2023 WL 2207588, at *12 (D.N.J. Feb. 24, 2023) (citing *Newark Cab Ass'n v. City of Newark*, 901 F.3d 146, 151 (3d Cir. 2018)). "'A threshold determination in any takings case is whether the plaintiff has asserted a legally cognizable property interest.'" *Id.*

20

(quoting *Nekrilov v. City of Jersey City*, 45 F.4th 662, 669 (3d Cir. 2022)). "Once this threshold requirement is met, the Court then examines whether there has been a taking of that property interest for public use and without just compensation." *Id.* (citing *Nekrilov*, 45 F.4th at 669). Here, Plaintiff has proffered no facts to establish a plausible "taking" of any legally cognizable property interest.

Based on the foregoing deficiencies, the Complaint fails to state a claim upon which relief could be granted under 42 U.S.C. §1983. Because the Court cannot say that further amendment of Plaintiff's Section 1983 claims would be futile, the Court will dismiss those claims without prejudice, granting Plaintiff leave to reassert them in an amended pleading.

b. CLAIMS ASSERTED UNDER THE ADA / REHABILITATION ACT

The Complaint indicates that Plaintiff is attempting to state claims under the Americans with Disabilities Act ("ADA"). Relevantly, Plaintiff alleges that the "Defendants failed to provide reasonable accommodations to individuals with disabilities, including Plaintiff and Tiffany Oliver, in violation of the [ADA]." ECF No. 1-2 at 6, ¶31. Plaintiff further alleges that "Defendants engaged in discriminatory practices in employment decisions and provision of services based on disability status." *Id.* at ¶32.

Title I of the ADA prohibits employment discrimination on the basis of disability. 42 U.S.C. §§ 12112 *et seq*. To state a plausible claim under Title I of the ADA, a plaintiff must allege that he is a "qualified individual with a disability" within the meaning of the ADA and that he suffered an adverse employment decision as a result of the discrimination. *Tice v. Ctr. Area Transp. Auth.*, 247 F.3d 506, 511-12 (3d Cir. 2001). To establish a prima facie case of discrimination under the ADA, "an employee must show that [he]: (1) is disabled; (2) is otherwise qualified to perform the essential functions of the job, with or without reasonable

21

accommodations by [his] employer; and (3) has suffered an adverse employment action as a result of [his] disability, including [his] employer's refusal to make reasonable accommodation for [his] disability." *Keyhani v. Trs. of Univ. of Pa.*, 812 F. App'x 88, 91 (3d Cir. 2020) (per curiam) (quoting *Hohider v. United Parcel Serv. Inc.,* 574 F.3d 169, 186 (3d Cir. 2009)). "A person qualifies as 'disabled' under the ADA if he: (1) has a physical or mental impairment that substantially limits one or more of his major life activities; (2) has a record of such an impairment; or (3) is regarded as having such an impairment." *Keyes v. Catholic Charities of the Archdiocese of Phila.*, 415 F. App'x 405, 409 (3d Cir. 2011) (citing 42 U.S.C. § 12102(2)).

Here, Plaintiff states that he is a pansexual individual who is currently experiencing homelessness and identifies as physically and mentally disabled. ECF No. 1-2 at 4, ¶6.  Beyond this, the Complaint does not provide any information from which this Court can discern whether Plaintiff is a person who qualifies as "disabled" under the ADA.  Plaintiff also does not allege facts establishing who his employer is or was, what accommodation he needed in order to perform his job, or what actions any particular Defendant took that constituted disability-related discrimination.  Absent such allegations, Plaintiff cannot state a claim for employment discrimination under Title I of the ADA.  To the extent Plaintiff is attempting to assert a failure-to-accommodate claim on behalf of Tiffany Oliver, he cannot do so for reasons previously discussed.

Plaintiff also has not pled a violation of Title II of the ADA, which prohibits disability-based discrimination by a public entity or in connection with the "services, programs, or activities" of a public entity. *See* 42 U.S.C. §12132.  To state a claim under Title II of the ADA, a plaintiff must plead that "(1) he is a qualified individual; (2) with a disability; (3) who was excluded from participation in or denied the benefits of the services, programs, or activities of a

public entity, or was subjected to discrimination by any such entity; (4) by reason of his disability." *Haberle v. Troxel*, 885 F.3d 170, 178 (3d Cir. 2018) (quoting *Bowers v. NCAA*, 475 F.3d 524, 553 n.32 (3d Cir. 2007)). Again, Plaintiff has pled no facts that would allow the Court to infer a Defendant's liability under this standard.

Given Plaintiff's *pro se* status, the Court also considers the possibility that Plaintiff may intend to assert claims under the Rehabilitation Act ("RA"). Under Section 504 of the Rehabilitation Act, 29 U.S.C. §794(a), "[n]o otherwise qualified individual with a disability in the United States ... shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." To state a claim under Section 504 of the Rehabilitation Act, a plaintiff must allege: (1) that he is disabled within the meaning of the Act; (2) that he is otherwise qualified for the services sought; (3) that he was excluded from the services sought solely by reason of his handicap; and (4) that the program or activity in question receives federal financial assistance. *Strathie v. Dep't of Transp.*, 716 F.2d 227, 230 (3d Cir. 1983); *Furgess v. Pennsylvania Dep't of Corr.*, 933 F.3d 285, 288–89 (3d Cir. 2019). Plaintiff's conclusory allegations that he suffered discrimination, without more, are insufficient to state a plausible claim for relief under the Rehabilitation Act.

### c.   CLAIMS ASSERTED UNDER THE FAIR HOUSING ACT

The Complaint suggests that Plaintiff may be attempting to state claims under the Fair Housing Act based on theories of disparate treatment and/or disparate impact. To that end, Plaintiff alleges that "Defendant ECCM and associated landlords discriminated against [him] based on his transgender status and disability, providing substandard and unsafe housing accommodations." ECF No. 1-2 at 7, ¶38. He further claims that "Defendants failed to address

reasonable accommodation requests for Plaintiff's disabilities in violation of fair housing laws."
*Id.* at ¶39.

The Fair Housing Act ("FHA"), 42 U.S.C. §3604-3606, prohibits various forms of discrimination because of race, color, religion, sex, handicap, familial status, or national origin. Section 3604 addresses discrimination in the sale or rental of housing; Section 3605 addresses discrimination in connection with residential real estate-related transactions, and Section 3606 addresses discrimination in connection with the provision of brokerage services.

At present, the Court is unable to infer from the allegations in the Complaint that any named Defendant is liable for plausible violations of the Fair Housing Act. As with Plaintiff's other claims, no viable cause of action is stated because the Complaint fails to provide sufficient factual content and relies instead on conclusory allegations of wrongdoing. Because Plaintiff may be able to cure these deficiencies, the claims will be dismissed without prejudice to amend.

      d.  REMAINING STATE LAW CLAIMS

It also appears from the Complaint that Plaintiff is asserting numerous claims under state law, including claims based on an alleged breach of fiduciary duty, fraud or misrepresentation, intentional infliction of emotional distress, negligence, unjust enrichment, and violation of the Pennsylvania Ethics Act. Because this Court has presently dismissed all claims over which it has original jurisdiction, it may decline to exercise supplemental jurisdiction over Plaintiff's putative state law claims. *See* 28 U.S.C. §1367 (c)(3); Parker v. Panphil Realty, LLC, Civil Action No. 25-1493, 2025 WL 1436013 at *8 (E.D. Pa. May 19, 2025) ("We may decline to exercise supplemental jurisdiction under section 1367(c)(3) when we dismiss all claims over which we have original jurisdiction"). Accordingly, the Court need not presently address the viability of

Plaintiff's state law claims but will instead allow Plaintiff an opportunity to reassert those claims in an amended pleading.

### V.    Conclusion

For all of the above reasons, the Plaintiff has not established standing to assert his claims and/or the Complaint fails to state a claim upon which relief can be granted.  Plaintiff's claims against the Erie County Department of Health, Erie County Sheriff's Department, Erie County Office of Children and Youth, and Erie County Crisis Management Services are incapable of being remedied and will therefore be dismissed with prejudice.  However, the Court cannot say that amendment of the remaining claims would be inequitable or futile; therefore, the Court will grant Plaintiff thirty (30) days within which to file an amended pleading that conforms to the legal requirements discussed herein.

An appropriate order follows.

_Susan Paradise Baxter_
SUSAN PARADISE BAXTER
United States District Judge